# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRACI MANTOVANI and ROBERT MANTOVANI, <br><br> *Plaintiffs*, <br><br> v. <br><br> WELLS FARGO BANK, N.A. and M&U OCEAN HOLDINGS, LLC, <br><br> *Defendants.* | Civil Action No: 18-cv-0886 (PGS)(DEA) <br><br> **MEMORANDUM AND ORDER** |

SHERIDAN, U.S.D.J.

This matter comes before the Court on a motion to dismiss [ECF No. 13] filed by Defendant Wells Fargo Bank, N.A. (hereinafter, "Wells Fargo"). As a result of a foreclosure action brought by Wells Fargo before the New Jersey Superior Court, a judgment of foreclosure was entered against Plaintiffs Traci and Robert Mantovani, husband and wife. At the time this motion was heard, an appeal of the foreclosure decision was pending before the New Jersey Superior Court, Appellate Division.

## I.

As alleged in Plaintiff's Amended Complaint, Plaintiffs, Traci and Robert Mantovani are a married couple who purchased their home and property subject of this action on July 15, 2005 obtaining a mortgage loan in the amount of $354,000.00 from World Savings Bank. (First Amended Complaint, ECF No. 12, "FAC" ¶26) Plaintiffs' loan was allegedly securitized "with the Note not being properly transferred to the Bank of New York acting as a Trustee for the REMIC 20 Trust holding Plaintiffs' note." (Id. ¶27). Plaintiff believes that the mortgage on the Property, the debt or obligation evidenced by the Note and the Mortgage/Deed of Trust executed by Plaintiff

1

in favor of the original lender and other Defendants, was not properly assigned or transferred to Defendants. (Id. ¶30). Plaintiffs allege that the debt did not comply with New Jersey law or other laws and thus does not constitute valid and enforceable true sale. In support of these allegations, Plaintiffs provided a "Property Securitization Analysis Report," drafted by "Certified Forensic Loan auditors, LLC" and dated March 21, 2016. (ECF No. 12-1).

Prior to this action, Plaintiffs filed a bankruptcy claim in New Jersey state court, which was dismissed on jurisdictional grounds. (FAC ¶7). Plaintiff's Chapter 7 petition was eventually adjudicated. (Id.)

Defendant, Wells Fargo Bank N.A. ("Wells Fargo") is a lender, who filed a foreclosure action against Plaintiffs and their primary residence located in Toms River, New Jersey. A foreclosure judgment was entered, and the property was subject to a sheriff sale. At the sale, Defendant M&U Holdings LLC ("M&U") purchased the property (Id. ¶ 9).

Generally, Plaintiffs allege that Wells Fargo and M&U conspired "in a pattern and practice of Fraud to deprive the Plaintiffs and other New Jersey homeowners of their primary residence [...] through buying plaintiffs' home at a Sheriff's Sale below Market value, in a scheme to receive an unjust windfall."[1] (Id. ¶10).

*Procedural History*

---

[1] The Complaint is unclear about two items: (1) whether Plaintiffs intended to bring a class action by reference to other homeowners; (2) Plaintiff allegations against the Superior Court of New Jersey, Chancery Division, which allegedly

> acted hand in hand with the defendant [Wells Fargo], through complicity and refusal to allow a full and fair Merits Hearing, where plaintiff could produce an Expert witness on foreclosures providing that the Defendant bank [W]ells Fargo was not in possession of a valid original Note at the time of filing the foreclosure and had no standing to do so, ignoring the written expert auditor's report submitted into the record and wrongfully granting defendants foreclosure action and Sheriffs Sale, giving the defendant Bank and their co-conspirators Defendant LLC) acting surreptitiously as the buyer wrongfully and unlawfully depriving the plaintiffs of their primary residence while sharing in an unjust windfall. [sic.]

(Id. ¶11). The state court is not a named Defendant in this action.

As previously stated, Plaintiffs took out a mortgage from World Savings Bank, FSB ("WSB") to purchase their home on July 15, 2005. Plaintiffs received a loan modification in 2007 (Conroy Cert. Ex. 1). Effective December 31, 2007, WSB merged with and became Wachovia Mortgage, FSB ("Wachovia") (Conroy Cert. Ex. 2).[2] On November 1, 2009, Wachovia merged into Wells Fargo Bank, N.A. Because of these events, Wells Fargo became the holder of the Note and Mortgage in dispute. (Conroy Cert. Ex. 1, 2). The Loan went into default on October 1, 2014, for failure to make payments. (Id.) After the Mantovanis failed to cure, the loan was accelerated, resulting in Wells Fargo's filing of a foreclosure action on May 6, 2015. On December 4, 2015, after the Mantovanis filed an answer, Wells Fargo moved for summary judgment which was granted on January 8, 2016. (Conroy Cert. Ex. 6). The Mantovanis then filed a motion to vacate the State Court Judgment on April 26, 2016. (Conroy Cert. Ex. 7). There, as in the Complaint before this Court, they argued that the foreclosure judgment was invalid for the following reasons,

> [Wells Fargo] is not in possession of the original Note and has no standing to foreclose of [Mantovanis] property... That no valid assignments were ever executed or filed between the parties and Wells Fargo Bank, NA, does not hold a valid assignment to collect the alleged debt....that [Wells Fargo]'s filed lis pendency against [the Mantovanis]'s property, which is not valid, is unenforceable where in [Wells Fargo] have no standing to foreclose, are not the owners in due course of the property, note, or debt and lis pendence must be vacated.... That [the Mantovanis] commissioned a Certified Forensic Audit, together with an affidavit executed by the auditor...That on January 8, 2016, this Honorable Court erroneously granted [Wells Fargo]'s motion for Summary Judgment granting Foreclosure, to a party who is not the owner in due course of the property, does not possess the original Note, does not have a valid assignment of the debt and has no standing to file foreclosure, or collect any alleged debt.

---

[2] The Court finds referring to the Conroy Certification's exhibits necessary to better understand the events leading to the present action. This motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6) and 12(b)(1). "In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original) "The rationale underlying this exception is that the primary problem raised by looking to documents outside the complaint—lack of notice to the plaintiff—is dissipated [w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint.'" *In re Burlington*, 114 F.3d at 1426 (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)).

3

(Conroy Cert. Ex. 7). On April 26, 2016, the state court denied the Mantovanis' request and entered a Final Judgment of foreclosure in favor of Wells Fargo. (Conroy Cert. Ex. 9).

On August 15, 2016, the borrowers filed a Notice of Appeal which was pending before New Jersey Appellate Division at the time this Court heard the present motion. As this Court understands, since then the Appellate Division rendered a decision affirming the lower court, the Mantovanis have filed an appeal with the Supreme Court of New Jersey.

On October 5, 2017, the Property was sold to a third-party buyer, M&U, at a Sheriff's sale. Plaintiffs filed this action before the Court on January 22, 2018 alleging multiple counts of fraud, and seeking return of their property (their primary residence) which they argue was sold wrongfully at the sheriff's sale. (TRO ¶1). Initially, Plaintiffs requested a temporary restraining order to prevent final transfer of the property to M&U Ocean Holdings. On January 23, the Court held a telephone conference with Plaintiff and signed an Order to Show Cause mandating that Plaintiffs serve all documents filed with the Court to Defendants, along with the order to show cause (OTSC). After a hearing was held on January 30, 2018, the Court denied Plaintiffs' injunctive relief request. (ECF No. 8).

On February 7, 2018, Plaintiff filed an Amended Complaint ("FAC") alleging the following claims: (1) Lack of Standing/wrongful foreclosure; (2) Fraud in the Concealment; (3) Fraud in the Inducement; (4) Intentional Infliction of Emotional Distress; (5) Slander of Title; (6) Quiet Title; (7) Declaratory Relief; (8) Violation of TILA (Truth in Lending Act) and HOEPA (Home Ownership and Equity and Protection Act), 15 U.S.C. 1601; (9) Violation of RESPA (Real Estate Settlement Procedures Act), 1 U.S.C. §2601; (10) Rescission; (11) Unjust Windfall; (12) Replevin; (13) Violation of the Fair Credit Reporting Act, 15 U.S.C. §1681; . (ECF No. 12). Defendant now moves to dismiss Plaintiff's Amended Complaint. (ECF No. 13).

Defendant, Wells Fargo, now moves to dismiss the Amended Complaint. Defendant's

motion to dismiss is brought pursuant to Fed. R. Civ. P. 12(b)(1), Rooker-Feldman and other doctrines of preemption. In brief, Defendant argues that this action is simply a collateral attack on the Foreclosure Judgment which was entered on June 29, 2016. Additionally, Defendant argues that all of the paragraphs pleaded in support of Plaintiffs' claims are conclusory allegations based on issues that were already decided by the State Court, and therefore fail to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

II.

First, the Court addresses any jurisdictional bars that may prevent review of this matter on its merit. Pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1), a claim can be dismissed for "lack of jurisdiction over the subject matter." This motion to dismiss may be asserted at any time in a case. *In re Kaiser Group Int'l, Inc.*, 399 F.3d 558, 565 (3d Cir. 2005). In a motion to dismiss based on subject matter jurisdiction, "the standard . . . is much more demanding [than the standard under 12(b)(6)]. "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). Since the defendant's attack is facial, the court will take all allegations in the complaint as true and "may dismiss the complaint only if it appears to a certainty that the plaintiff will not be able to assert a colorable claim of subject matter jurisdiction." *Liu v. Gonzales*, 2007 U.S. Dist. LEXIS 74611, at *7 (D.N.J. Oct. 5, 2007). Wells Fargo asserts several doctrines which bar the claim. Res judicata, the entire controversy doctrine, and the *Rooker-Feldman* doctrine are discussed below.

*Res Judicata and Entire Controversy Doctrine*

A federal court is required to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the state from which the judgments emerged. *Chrystal v. N.J. Dep't of Law & Pub. Safety*, 535 Fed. Appx. 120, 123 (3d Cir. 2013). "Thus, to

determine whether [] preclusion is a necessary consequence of prior state court litigation, a court must look to the law of the state adjudicating the prior action." *Coppolino v. Total Call Intern. Inc.*, 588 F. Supp. 2d 594, 599 (D.N.J. 2008) (further citation and internal quotations omitted).

The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought. It protects litigants from the burden of re-litigating an identical issue with the same party or his privity and promotes judicial economy by preventing needless litigation. Both New Jersey and federal law apply res judicata or claim preclusion when three circumstances are present: (1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action. *In re Mullarkey*, 536 F.3d 215, 225 (3d Cir. 2008) (further citation and internal quotations omitted).

> New Jersey's entire controversy doctrine . . . 'compels the parties, when possible, to bring all claims relevant to the underlying controversy in one legal action,' including defenses and counterclaims . . . . It does so by barring parties from raising, in subsequent proceeding, any claims it knew, or should have known about, during a prior proceeding . . . The doctrine does not bar claims that "accrued after the pendency of the original action".

*Napoli v. HSBC Mortg. Servs.*, 2012 U.S. Dist. LEXIS 121204, at *8-10, (D.N.J. Aug. 27, 2012) (internal citations omitted).

The entire controversy doctrine is an equitable doctrine and "the polestar of the application of the rule is judicial fairness." *Chrystal*, 535 Fed. Appx. at 123 (citation omitted). "As a result, the doctrine does not apply to bar component claims that are either unknown unarisen or unaccrued at the time of the original action." *Id.* at 124. (citation omitted). Further, "in considering fairness to the party whose claim is sought to be barred a court must consider whether the claimant had a fair and reasonable opportunity to have fully litigated that claim in the original action. Id. (citation omitted).

The entire controversy doctrine applies to foreclosure actions, but is "narrower" in this context, requiring only "germane" counterclaims to be joined. N.J. Ct. R. 4:64-5; *Coleman v.*

*Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472 (3d Cir. 2011); *see also In re Mullarkey,* 536 F.3d 215, 229 (3d Cir. 2008) (holding that the doctrine applies to foreclosure proceedings). Germane counterclaims are those that "arise out of the mortgage that is the basis of the foreclosure action" (*Coleman*, 446 F. App'x at 472) and include claims relating to "payment and discharge, [and] incorrect computation of the amounts due." *LaSalle Nat'l Bank v. Johnson*, 2006 WL 551563, at *2 (N.J. Super. Ct. Ch. Div. Mar. 3 2006).

*Rooker-Feldman Doctrine*

Pursuant to the *Rooker-Feldman* Doctrine, federal district courts are barred from hearing cases "that are essentially appeals from state-court judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 165 (3d Cir. 2010). "The Third Circuit has explicitly held that federal courts are barred by the *Rooker-Feldman* doctrine from providing relief that would overturn a state court foreclosure decision." *Perez v. Seterus, Inc.*, 2017 U.S. Dist. LEXIS 190217, *5-6 (D.N.J. Nov. 16, 2017); *See, e.g., Gage v. Wells Fargo Bank*, NA AS, 521 F. App'x 49, 51 (3d Cir. 2013); *Manu v. Nat'l City Bank of Ind.*, 471 F. App'x 101, 105 (3d Cir. 2012).

The *Rooker-Feldman* doctrine requires meeting four elements, "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co*, 615 F.3d at 166 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

Here, the first and the third prong have been met. Plaintiffs lost in state court where a judgment of foreclosure was issued in 2016.[3] Plaintiffs filed this claim in 2018, after the foreclosure judgment was issued.

As to the second and fourth prong, Plaintiffs allege injuries that derived from Wells Fargo's unlawful and improper pursuit of foreclosure on their property. There is an analogous case. *See, Gage v. Wells Fargo Bank*, NA AS, 521 F. App'x 49, 51 (3d Cir. 2013). In *Gage*, the Court found that "[a]djudicating Plaintiffs' claims would require this Court to impermissibly engage in appellate review of the foreclosure action." *Id.* at *8. Accordingly, the Third Circuit held that "[Plaintiff] cannot evade *Rooker-Feldman* by arguing on appeal that he was not injured by the foreclosure judgment, but rather by Wells Fargo's purportedly fraudulent actions. The Complaint reveals the nature of [Plaintiffs]'s claim . . ." The same principles as stated above apply to the facts of this case.

Reviewing the matter presented by Plaintiffs would necessarily require this Court to review the validity of the Foreclosure Judgment by the State court. As Defendant points out, the validity of the loan, Wells Fargo's standing, and the proper character of the foreclosure proceedings were already determined by the State court. (Def. Br. pg. 6). In order to establish a prima facie case of foreclosure, Wells Fargo had to prove the following before the New Jersey Chancery Division: "(1) the mortgage and loan documents are valid; (2) the mortgage loan is in default; and (3) it has a contractual right to foreclose in light of the default." *Bank of Am., N.A. Westheimer*, No. 12-7080 (JAP), 2014 BL 55500, at *11 (D.N.J. Feb. 28, 2014) citing *Great Falls Bank v. Pardo*, 263 N.J. Super. 338, 394 (Ch. Div. 1993), *aff'd*, 273 N.J. Super. 542, 545 (App. Div. 1994). The validity of those elements constitutes the bulk of Plaintiffs' arguments before this Court. All of the

---

[3] This decision was recently affirmed by the New Jersey Appellate Division. See Wells Fargo Bank, N.A. v. Mantovani, 2018 N.J. Super. Unpub. LEXIS 1166, 2018 WL 2271236 (App. Div. May 18, 2018).

8

allegations in Plaintiffs' Amended Complaint are premised on the assumption that there has been some kind of impropriety in connection with the alleged securitization of the loan based on a certified forensic audit that they procured. Effectively, the causes of action are attempting to undue the judgment in the foreclosure. The causes of wrongful foreclosure (Count I), fraud in concealment (Count II), fraud in inducement (Count III), slander of title (Count V) and quiet title (Count VI) all raise issues about title or ownership of property. Obviously, all of these issues were, or could have been raised in the state foreclosure action. As a result, they are barred here. Similarly, Plaintiff asserts a cause of action for declaratory relief (Count VII) seeking to declare the assignment of note and mortgage invalid. Obviously, this fails for the same reason.

With regard to Count IV (intentional infliction of emotional distress) Plaintiffs' allege that they "did not default in the manner stated in the Notice of Default." (FAC ¶90) and that "as a proximate cause of Defendant's conduct, Plaintiff has experienced many sleepless nights, severe depression, lack of appetite, and loss of productivity at its place of employment" (FAC ¶91). Plaintiffs allege that "the conduct of Defendants, each of them, as herein described, was so vile, contemptible, miserable, wretched, and loathsome that it would be looked down upon and despised by ordinary people." (FAC ¶92). The statements in this claim are conclusory in nature. Notwithstanding, the claim should have been raised in the State court. Reviewing the validity of this claim would raise a question as to the appropriateness of the State court's judgment.

In Count VIII, Plaintiffs argue that Defendants violated TILA/HOEPA by failing to provide Plaintiff with accurate material disclosures required thereunder. They argue that Defendants did take into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. Plaintiffs state that TILA/HOEPA also requires the lender to offer

other loan products that might be more advantageous for the borrower under the same qualifying matrix. (FAC ¶123). However, Plaintiffs were aware of the facts set forth in this claim at the time of the State action and should have raised this claim at the time pursuant to the entire controversy doctrine.

In Count IX Plaintiffs allege a RESPA violation based on the disproportionate gain. That is, Plaintiff' argue that Defendants derived gain from a situation that was directly caused by the actions of Defendant. Defendants' failed to disclose the financial benefit to them, while Plaintiff suffered financially as a result of the loan product sold to Plaintiff. (FAC ¶134). Additionally, Plaintiff alleges that Defendant "violated RESPA because the payments between the Defendants were misleading and designed to create a windfall. These actions were deceptive, fraudulent and self-serving." (FAC ¶136). The statements in this claim are conclusory. Further, this Court will not review the merits of this claim as appellate review in state court is the more appropriate forum for review since this claim is germane to that action raised in state court.

The same reasoning applies to Count X where Plaintiffs argue that they are entitled to rescind the loan for a number of reasons including TILA Violations, failure to provide a Mortgage Loan Origination Agreement, fraudulent concealment, fraudulent inducement, failure to abide by PSA, making illegal or fraudulent transfer of the note and mortgage/deed of trust, and on public policy grounds. (FAC ¶139).

Count XI is self-explanatory as it alleges that Defendants benefited from an unjust windfall as a result of their actions. (FAC ¶¶143-145). This Claim fundamentally repeats the allegations in Claim IX and will not be reviewed for the same reasons.

In Count XII Plaintiffs seek an order of Replevin returning their property to them. (FAC ¶¶146-147). By asking the Court to return the property to them, Plaintiffs are asking this Court to

reverse the actions of the state court -- an action that is barred by the Rooker-Feldman doctrine. This claim is based on Defendant falsely and fraudulently claiming to be the owner of Plaintiff's residence without possession of a valid Note or standing to do so. (FAC ¶150). For all the reasons stated above, the Court will not review the merits of this claim.

In conclusion, all the claims raised in the Amended Complaint, were or could have been raised during the foreclosure action, thus this Court is barred from reviewing their merits both by the Rooker-Feldman Doctrine and by the Entire Controversy Doctrine.

## ORDER

This matter having come before the Court on a motion to dismiss Plaintiff's first amended complaint, brought by Defendant Wells Fargo [ECF No. 13]; and the Court having considered the briefs and oral arguments of the parties; and for good cause having been shown;

IT IS on this 13th day of August, 2018;

**ORDERED** that Defendant's motion to dismiss [ECF No. 13] is GRANTED.

PETER G. SHERIDAN, U.S.D.J.